**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CYNTHIA KLING, TRACEY KLINGER, JUSTIN KNAPP, BRUCE KNAPP, GREGORY KNIGHT, JOYCE KNIGHT, RODGER KNIGHTEN, SHANE KOUBA, KRISTINA KRUGER, JACQUELINE KUNSTMAN, JEREMY KUNSTMAN, CLYDE KYSER, MARGARET LABRECQUE, DARYL LAFOUNTAIN, GLEN LAIRD, NAVSHAD LALANI, BRADLEY LAMB, JASON LANGLEY, WILLIAM LANIER, MICHAEL LANNING, MATTHEW LATTIN, WENDY LAVACHEK, MICHAEL LAWRENCE, GORDON LAWRENCE, RORY LAWRENCE, DORNELLA LEAL, JERALD LEE, SAMUEL LEGARRETA, MARIA LEKITY, GARY LEMMON, DEBORAH LENARD, JANET LENNOX, THELMA LEROY, MICHAEL LEVINGSTON, JULIAN LEWIS, TAMARA LEWIS, KIMBERLY LEWIS, NANCY LEWIS, JUSTIN LIGHTNER, EDWARD LIMMER, JUSTIN LINDSAY, KYLE LINDSEY, CHARLES LINGLE, SCOTT LITTLE, CHRISTINA LITTLEDALE, LOUIS LOBRIGO, RACHEL LOCKE, TERESA LODATO, PHILLIP LOGAN, LORING LONEY SR., MITCHELL LONG, STELLA LOPEZ-JIMENEZ, PAUL LUCAS, LANCE LUELOFF, KAMARI LYONS, AMY MACKAY, DOUGLAS MACKLING, LUKE MACLEAN, CARLOS MAES, ANTHONY MAEZ, SHELIA MAJOR, JOHN MARINO, SANDRA MARKER, KENNETH MARKUS, LINDA MARLETT, WILLIAM MARSH, JOHN MARSHALL, TERRELL MARTIN, KENNETH MARTIN, JULIA MARTIN, WILLIAM MASON, BARRY MASTERS, DOUG MASTERS, THOMAS MATTHEWS, ANNELENA MATTISON, THOMAS MAXEY, RICHARD MAXSON, CRYSTAL MCCAULEY, EMMA MCCORD, ANTHONY MCCORMICK, KEVIN MCCOTTRY, JESSICA MCCOY, WALNITA MCCREE, ANDREW MCCULLIN, JANICE MCDOUGAL, TAMMY MCDOWELL, TECHERS T MCGIBBON, JAMES MCGLADE, KEVIN MCGOUGH, LEO MCGREW, KEVIN MCKAY, PATRICK MCKEOWN, ROBERT MCLAGAN, ANGELO MCLAURIN, BRYAN MCNABB, JENNIFER MEASE, REBECCA MELTZ, | Case No.<br><br><br>**NOTICE OF REMOVAL** |

DENNIS MERRIGAN, RYAN MESTON, ROBERT
MICKLES, LAURA MIDDLETON, CHRISTINE
MIELOCK, BRIAN MIKULA, MICHAEL MILES,
ROBERT MILLER, DANIEL MILLER, ANGELA
MILLER, CHRISTOPHER MILLER, MARK
MILLER, BARBARA MILLS, KENNETH MIMS,
ROBERT MINER, NATHANIEL MITCHELL,
CHARLES MOESS, JOHN MOGELNICKI, KIT
MOGLE, SAMANTHA MONROE, RICHARD
MONTOYA, KATHERINE MORENO,
AMBERLEIGH MORRIS, CONRAD MORRIS,
BERTIE MORRIS, MARC MORRISETTE,
VICTORIA MORROW, JACE MORROW, DWIGHT
MOTZ, JACKIE MOULD, PAMELA MOULTRAY,
GARY MOXLEY SR., JOE MRAZ, NEOCCESHA
MUDD, ANDREA MULLEN, ALEXANDER
MUNIZ, DAVID MUNOZ, JAMES MURPHY,
MICHAEL MUSHNICK, ROBERT MYERS,
DAPHNIE NANTONJACKSON, TAMMY NELSON,
CEDRIC NELSON, HENRY NELSON, TIMOTHY
NELSON, JOHN NERI, JACOB NEWTON,
GERALD NIEDOWICZ, HOWARD NIELSEN, DAN
NOEL, MATHEW NOLL, RICHARD NOLL,
SUSAN NOLL, KARIN NORMAN, WILLIAM
NORMAN, MICHAEL NOTHSTINE, ADAM
NOWICKI, DAVID NUNO, SHERYL
NURENBERG, EDITH OBRYAN, JOEY O'DELL,
ERIC OLIVER, ZACHERY O'NEIL, MARY ONEIL,
JENNIFER OVERBY, ANTHONY OWENS,
RANDY OWINGS, BRENT PADDACK, MICHAEL
PAGANO, HEATHER PAGE, JONATHAN PAGE,
GREGORY PALMATEER, DEBORAH PALUMBO,
FILIPPO PALUMBO, WILBERT PARKS, RICHARD
PARKS, GINGER PATRICK, JON PATTERSON,
JOHN PATTI, JIM PAULSEN, JULIAN PEACOCK,
JENNIFER PEMP, BOBBIE PEREZ, DARRIUS
PERRY, ROY PETERSON, EMMANUEL
PETERSON, NIKKI PETREE, GLYNIS PHILLIPS,
LAUREN PICARD, MCHENRY PIERRE, RICKY
PIKE JR., THOMAS PIO, RODNEY PIRKLE,
CAITLIN PIRTLE, WAYNE PLATTEN, ANDREW
PLESEK, BRET PLYBON, JUANA POSADA,
CHRISTINE POTTER, LARRY POULIN,
WENDELL POWELL, KATHERINE POYNTER,
JAMES PRATHER, JERRY PRICE, CELQUETTA D.
PRIDE, LAUREN PRIMM, NAHZEER PRYOR,

2

SUSAN QUINTERO, LA'KIA RADCLIFF, RONALD
RAGSDALE JR., SOHAIL RANA, ASHLEIGH
RARDON, RONALD RASH JR., CHARLES
RATHBURN, CAMDEN REDDISH, MARILYN
REED, JULIE D. REID, BENJAMIN REISS,
MICHAEL RESSEL, JAMES RETHWISCH, JAMES
REVEAL, SYLVIA REYNA RAMOS, DEBRA
RICE, GREGORY RICH, JENNIFER RIEL, JAMES
RIPKA, DAMON RISPRESS, STEVE RIVE, DAVID
ROBBINS, STEPHEN ROBENS, AMBER
ROBERTS, GEORGIA ROBINSON, ROBERT
ROBINSON, JACOB RODGERS, GERMAIN
RODRIGUEZ, FELIPE RODRIGUEZ, LUIS
RODRIGUEZ, SANDRA RODRIGUEZ, DAVID
ROLPH, STUART ROPER, SHARON ROSADO,
MELODY ROSS, NICHOLAS ROSS, JOHN ROSS
JR., JENNIFER ROSSER, SUSAN ROSTAR,
PATRICK ROY, TARAS RUBYCZ, ELONDA
RUSS, RAYMOND RUSSELL, OZIE RYALS,
COLLEEN SAMSON, MARK SAMUEL, JACK
SANDER, DALE SANDERLIN, STEVEN
SANDERSON, DEREK SANDUSKY, MARY ANN
SANTIAGO, MARIA SAUNDERS, KASSANDRA
SAUNDERS, TARYN SAWYER, JUDITH
SCAPPATICCIO, JOHN SCAVONE, DIANE
SCHAEFER, DOMINICK SCHEID, RAYMOND
SCHELLINGER JR., JOHN SCHENNE, ANGELA
SCHERES, NICHOLAS SCHETTINI, RONALD
SCHLAPPIE, JUSTIN SCHMITZ, TERRY SCHOOF,
MARC SCHOTT, MARI SCHREDER, LISA
SCHUELLER, JAMES SCHULZ, THOMAS
SCOGGINS, PARIS SCOTT, JOHANNA SCOTT,
GREGORY SCOTT, RHONDA SCRUGGS, JASON
SEDDON, CHARLENE SEGUI, FANESSA
SELLERS, JOSEPH SELLERS, ANDREW SEMP,
PATRICIA SHAFFER, COLTON SHEETS, BLAKE
SHELTON, NICHOLAS SHRUBB, CALLIE
SHUFELT, EDDIE SHY, ROY SIEVERS,
ESTRELLITA SILVA, MICHEAL SIMONTON,
JESSICA SIMS, JANETTE SINGLETON, TIMOTHY
SINGLETON, ARTRELLA SINKLER, CRYSTAL
SINNER, STRABO SIRES, REBECCA SJODIN,
KAYLA SMALLEN, GREGORY SMITH, CARRIE
SMITH, ELIZABETH SMITH, JOHN SMITH, TODD
SMITH, ERIN SMITH, TERRI SMITH, PAULA
SMITH, DANIEL SMITH, DAVID SMITH,

ELIZABETH SOLIZ, APRIL SONNENTAG, PETER
SORENSEN, JAMES SOTTILE JR., JENNIFER
SOWERS, STEVE SPANN SR., BEVERLY
SPARKMAN, ELIZABETH SPARKMAN,
TIMOTHY SPATEHOLTS, TIFFANY SPENCER,
PHILIP SPENCER, CLIFTON SPRIVEY, PAULA
SPURGEON-HADDIX, MICHAEL SQUIRES,
STEVEN STARCHER, ELEANOR STATEN,
ROBERT STEIDLEY, BARTHOLOMEW
STEINBURG, BRITTNEY STEVENS, SHANE
STEVENS, DANIEL STEWARD, RICHARD STIER,
DENISE STIFFLER, APRIL STITT, TINA STITT,
JON STOKES, ANTHONY STONE, WILLIE JOE
STOVALL, WENDY STRAND, LINDA STREETER,
JUSTIN STUBBENDICK, KIMBERLY STYLES,
TIMOTHY STYLES, KATRINA SULLIVAN, TONI
SUMMERELL, AGNES SVOBODA, ROBERTA
SWEET, KARLA SWIFT, CHARLES TATE, WILL
TAVARES, EDWARD TAYLOR, ROBERT
TAYLOR, JAMES TAYLOR, GEORGE TERZI,
MICHAEL THOMAS, STEVEN THOMAS, BRUCE
THOMPKINS, MICHAEL THOMPSON, DAVID
THORNTON, AUSTIN TINGLEY, JACK TIPOLD,
LANTZ TIPTON, DANIEL TOBIAS, ANNE TODD,
ANDREW TOMALO, PATRIC TOMPKINS,
CHARLES TRAKEL, JESSICA TRINKELLA,
RUSSELL TRUFANT, EMILY TURNBULL,
CHARLES TURNER, CHARLES TURNEY, JUNIUS
TYLER, KRIS UNDERWOOD, RUFO UNGACTA,
JUDEE UTOH, MICHELE VALENTIN, SHAWN
VALENTINE, JILL VANDEGRIFT, ROY VARNEY,
LUIS VASQUEZ, MICHAEL VENTERS, ROBERT
VEST, CAPRICE VIZCAYA, ERIC WADDLE,
STEPHANIE WADE, ALISA WAHRER, JENNIFER
WALCH-GROSS, SCOTT WALKER, COREY
WALKER, KEVIN WALKER, AUTUMN WALKER,
DANIEL WALSH, DEWAYNE WASHINGTON,
HAROLD WASHINGTON, FRANK WATERS,
STEPHEN WATKINS, DALE WATKINS SR.,
ZANDA WATSON, JAMES WEAKLEY, FRED
WEBER, JERRY WEDDLE, MICHELLE WEIDNER,
SCOTT WEISS, VICKY WELLINGTON, JOANNE
WENDEL, FRANK LEROY WESCOM SR., APRIL
WESTERLUND, CHAD WETZEL, CLIFTON
WHEELER JR., CHARLES WHITE, DURANCE
WHITE, GREGORY WHITE, TRENTON WHITED,

4

YESMIN WHITEHEAD, CHARLES WHITLOCK,
TONY WHITT, PATRICIA M. WICKS, PETER
WILKINS, CRAIG WILLCUTT, DAVID
WILLIAMS, ERNEST L WILLIAMS, CHARLES H
WILLIAMS, RACHEL WILLIAMS, CELESTINE
WILLIAMS, CYNTHIA WILLIAMS, MADISON
WILLIAMS, JEFF WILLIAMS, ROGER
WILLIAMS, LATRETTA WILLIAMS, TIMOTHY
WILLIAMS, KELVIN WILLIAMS SR., ANNMARIE
WILSON, MICHAEL WILSON, DAWN WILSON,
EDWIN WILSON, HARRY WILSON, KENDRIX
WILSON, BENNY WILSON, JOSEPH WILSON,
LATONIA WILSON, NICHOLAS WILSON,
ANTOINETTE WILSON BATTS, LAURA WILTZ,
BRIAN WINGROVE, TARASTAR WINKLER,
CHAZ WITTMAN, KALVIN WLAZLINSKI,
MICHELE WOCKENFUSS, KYLE WOOD SR.,
BENNY WOODWARD SR., CHARLLAI WOOTEN,
BRIAN WORTLEY, KAMI WRIGHT, GREGORY
WRIGHT, KAREN XAVIER, ALAN YANKEE,
KEVIN YENOWINE, KATHLEEN YOPP,
MAUREEN YOUNG, SE YOUNG OH, HERSCHEL
YOUNGER, MICHAEL YUSCHIK, JULIE ZEBLEY,
JEANNE M. ZIELINSKI, and SIERRA ZOGG,

Plaintiffs,

v.

THE 3M COMPANY (f/k/a Minnesota Mining and
Manufacturing Company), AGC CHEMICALS
AMERICAS INC., AMEREX CORP, ARCHROMA
U.S. INC., ARKEMA, INC., BASF CORP.,
BUCKEYE FIRE EQUIPMENT CO., CARRIER
GLOBAL CORP., CHEMDESIGN PRODUCTS,
INC., CHEMGUARD, INC., CHEMICALS, INC.,
THE CHEMOURS CO., CHEMOURS COMPANY
FC, LLC, CHUBB FIRE, LTD., CLARIANT CORP.,
CORTEVA, INC., DEEPWATER CHEMICALS,
INC., DU PONT DE NEMOURS, INC., DYNAX
CORP., E.I. DU PONT DE NEMOURS AND
COMPANY, KIDDE PLC, INC., NATION FORD
CHEMICAL CO., NATIONAL FOAM, INC., TYCO
FIRE PRODUCTS LP, UNITED TECHNOLOGIES

CORP., and UTC FIRE & SECURITY AMERICAS, CORP.,

                    Defendants.

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of New Jersey, Morris County, to the United States District Court for the District of New Jersey. As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foams ("AFFF"), thereby causing injury to Plaintiffs.

2.      Specifically, Plaintiffs allege that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF, that these substances contaminated drinking water at Plaintiffs' residences and workplaces, and that these same substances caused injury to Plaintiffs.

3.      Plaintiffs allege that they were injured by PFAS contamination from AFFF at military facilities where they resided or worked. (Compl. ¶¶ 11–476.) AFFF sold to the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). Thus, to the extent that Plaintiffs allegedly were exposed to PFAS from AFFF manufactured by 3M used at military facilities, those PFAS derived at least in part from MilSpec AFFF. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), 3M is immune to tort

6

liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## **BACKGROUND**

4.     This action was filed on April 24, 2025, in the Superior Court of New Jersey, Morris County, bearing docket number MRS-L-946-25. Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1442(a) because the Superior Court of New Jersey, Morris County, is located within the District of New Jersey.

5.     Plaintiffs served 3M on August 21, 2025. Removal is timely pursuant to 28 U.S.C. § 1446(b).

6.     3M is not required to notify or obtain the consent of any other defendant to remove this action under § 1442(a)(1). *See, e.g.*, *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 193 n.2 (4th Cir. 2025) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)).

7.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products, which contain PFAS, including PFOS, PFOA, and/or their precursors. (*E.g.*, Compl. ¶¶ 1, 3.) Plaintiffs allege that they were "exposed to PFAS through ingestion of drinking water while living and/ or working at military installations." (*Id.* ¶¶ 11–476.) Plaintiffs allege that, as a result of the alleged contamination from AFFF, they "suffered severe personal injuries." (*Id.* ¶ 613; *see also id.* ¶¶ 11–476.)

8.     Plaintiffs assert claims against all Defendants, including 3M, for negligence (*id.* ¶¶ 591–594), battery (*id.* ¶¶ 595–607), failure to warn (*id.* ¶¶ 608–614), defective design (*id.* ¶¶ 615–622), strict liability (statutory) (*id.* ¶¶ 623–629), strict liability (Restatement) (*id.* ¶¶ 630–639), fraudulent concealment (*id.* ¶¶ 640–647), breach of express and implied warranties (*id.* ¶¶ 648–653), and wantonness (*id.* ¶¶ 654–658).

9.     Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of the Summons, Complaint, and all other documents on file in the state-court proceeding are attached hereto as Exhibit A.

10.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Superior Court of New Jersey, Morris County.

11.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.    3M reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

13.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a

"colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Maryland v. 3M Co.*, 130 F.4th 380, 388 (4th Cir. 2025); *Isaacson*, 517 F.3d at 135.

14.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects the principle "that those acting at the federal government's direction should be able to defend themselves in federal—not state—court, lest states be able to stymy the federal government's operations." *Maryland v. 3M Co.*, 130 F.4th at 387. This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *accord Maryland v. 3M Co.*, 130 F.4th at 387. To the contrary, § 1442 must be "liberally construed" in favor of removal. *Maryland v. 3M Co.*, 130 F.4th at 388; *Isaacson*, 517 F.3d at 136.

15.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Maryland v. 3M Co.*, 130 F.4th at 390 ("[Plaintiffs] plead general PFAS contamination near military bases where 3M alleges it sold Military AFFF. On this record, we have no trouble considering as plausible 3M's allegations [in its notice of removal] that some of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production."); *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M*

*Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF).

16.    The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See* Order at 3–6, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019), Dkt. No. 103 ("MDL Order 1"); Order at 3–5, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Sep. 27, 2019), Dkt. No. 320 ("MDL Order 2"); Order at 3–6, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Oct. 1, 2019), Dkt. No. 325 ("MDL Order 3"). Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, is properly removed to federal court.

**A.    MilSpec AFFF**

17.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[1] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[2]

---

[1] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[2] Don DeYoung, U.S. Navy, NRL/MR/1001--06-8951, The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

18.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969 and has been revised a number of times since then.[3] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[4] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[5] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

19.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short

---

[3] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[4] Defense Standardization Program Off., SD-6, Provisions Governing Qualification 2 (Aug. 2019), https://tinyurl.com/y5asm5bw.

[5] *Id.*

term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

> *1.    The "Person" Requirement Is Satisfied*

20.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

> *2.    The "Acting Under" Requirement Is Satisfied*

21.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

22.    The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used

by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Maryland v. 3M Co.*, 130 F.4th at 385; *Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[6] Accordingly, the military has long depended on outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

23.    In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[7]

---

[6] Fulfilling the Roosevelts' Vision, *supra* note 2, at 37.

[7] *See* Defense Standardization Program Off., *supra* note 4, at 2.

3.    *The "Under Color of Federal Office" Requirement Is Satisfied*

24.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal office. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[8] It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137–38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties).

25.    Here, Plaintiffs' claims arise at least in part from 3M's production and sale of AFFF manufactured to military specifications for use at military facilities. Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries. 3M contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by 3M and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF. The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,

---

[8] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [Defendant] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

26.     Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiffs' alleged injuries and 3M's actions under color of federal office thus is clear. It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit *Defendants'* theory of the case when determining whether there is such a connection." *Maryland v. 3M Co.*, 130 F.4th at 389 (internal quotation marks omitted); *accord Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied

27.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

28.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry

"is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).[9] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Where the parties dispute difficult factual questions about that federal interest, a contractor acting at the government's direction 'should have the opportunity to present their version of the facts to a federal, not a state, court.'" *Maryland v. 3M Co.*, 130 F.4th at 391 (quoting *Willingham*, 395 U.S. at 409).

29.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30.    3M has satisfied these elements for purposes of removal. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications

---

[9] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citation omitted)).

governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise," including in requiring the use of PFAS. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. See *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

31.      With respect to the second requirement, the Removing Defendant's products have appeared on the DoD Qualified Products List,[10] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

32.      Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the

---

[10] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), Dkt. No. 1969-24).

soil and potentially reach groundwater, and that it has been reported that this may raise environmental or human health issues.[11] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, the U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[12] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[13] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the U.S. Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[14] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present

---

[11] *See, e.g.*, U.S. EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts 1–6 (Nov. 4, 2002).

[12] *See* Edward S. K. Chian et al., Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients 1 (Oct. 1980), https://apps.dtic.mil/sti/tr/pdf/ADA136612 .pdf.

[13] Dep't of the Air Force, ETL 91-4, Engineering Technical Letter: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991), https://apps.dtic.mil/sti/pdfs/ADA237594.pdf.

[14] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

(subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[15] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ").

33.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

34.    3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole

---

[15] *See* MIL-PRF-24385F(SH), Amend. 4, § 6.6 & tbls. I, III (Apr. 7, 2020), https://quicksearch.dla .mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts*, U.S. Dep't of Defense (Sep. 16, 2020), https://tinyurl .com/ty5ku8hp.

or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

35.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sep. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Superior Court of New Jersey, Morris County, to this Court.

Respectfully submitted,

Dated: September 19, 2025           */s/ Michael C. Zogby*
                                    Michael C. Zogby
                                    Chanda A. Miller
                                    Barnes & Thornburg LLP
                                    67 E. Park Place, Suite 1000
                                    Morristown, NJ 07960
                                    Phone: (973) 775-6101
                                    Email: Michael.Zogby@btlaw.com
                                    Email: Chanda.Miller@btlaw.com


                                    *Attorneys for Defendant 3M Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025, I filed the foregoing with the Clerk of the Court by the CM/ECF system.


Dated: September 19, 2025                    */s/ Michael C. Zogby*_____